Louis Holland, Plaintiff, v. Fred Y. Presley and Others, Defendants.*

Supreme Court, Special Term, Kings County, April 29, 1938.

* See supplemental opinion, 168 Misc. 942.

*Lotterman & Tepper* [*Louis A. Tepper* and *Joseph Lotterman* of counsel], for the plaintiff.

*Cullen & Dykman* [*Jackson Dykman* and *Jules Haberman* of counsel], for the defendants.

STEINBRINK, J. The plaintiff, a stockholder of the National Investors Corporation (hereinafter called the corporation), sues in a representative capacity to compel the directors thereof to restore corporate moneys alleged to have been wasted and misappropriated.

The present controversy arises out of settlement by the corporation and its president, Fred Y. Presley, of a judgment obtained against them by the widow and executrix of Eugene Lamb Richards. To understand the nature of the issues now tendered it will be necessary to briefly review the facts of the Richards action. The plaintiff in that action alleged that her deceased husband, Presley, and Guardian Detroit Company (hereinafter called Guardian Co.) were engaged in a joint venture for the promotion of an investment trust subsequently organized as the corporation herein; that by agreement with Presley, Richards was to receive from the Guardian Co. for his services options to purchase 10,000 shares of common stock of the corporation at ten dollars per share; that her husband died shortly thereafter; and that in February, 1928, she was fraudlently induced to execute a release in favor of Presley, the corporation and Guardian Co. of her claims arising out of the alleged joint venture. She received $5,000 for this release. In her prayer for relief, plaintiff asked for avoidance of the release, for an accounting of the joint venture and for a delivery to her of the options to which she claimed her husband was entitled. The action came on for trial. At the close of the plaintiff's case the complaint was dismissed as to the corporation and at the close of the whole case there was judgment for the other defendants dismissing the complaint on the merits. On appeal, the Appellate Division (*Richards* v. *Presley*, 243 App. Div. 636), reversed the judgment of dismissal, made new findings of fact and conclusions of law, and in directing a judgment in favor of the plaintiff held that the plaintiff's testator, Presley and Guardian Co. were joint venturers; that they, as well as the corporation, by reason of benefits received, must account to the plaintiff, and that the release executed by the plaintiff had been obtained by fraud. After entry of an interlocutory judgment the case was submitted to Special Term for the appointment of a referee to take and state an account and to report thereon. The referee in his

report assessed damages at $1,778,965.75. This was thereafter modified by reducing the damages to $251,666.67, which, with interest and allowances, brought the total judgment thereafter entered to $381,324.74.

After notices of appeal from the judgment were served and filed, Mrs. Richards agreed to accept $200,000 in settlement. At a meeting of the board of directors of the corporation Presley suggested that he and the corporation each contribute one-half to the proposed settlement, with the proviso that mutual releases were to be given. The suggestion was adopted. Accordingly, each paid $100,000 to Mrs. Richards and mutual releases were exchanged by all of the parties.

The plaintiff is not concerned with the propriety of the corporate action in settling for $100,000 the judgment obtained against it by Mrs. Richards, but asserts that the directors of the corporation in violation of their duties as such have refused to pursue a claim of restitution on the part of the corporation against Presley.

The defendants deny that Presley was under any obligation to make restitution to the corporation. Their argument runs as follows: The corporation is bound by the determination of the Appellate Division that it was guilty of the fraud practiced on Mrs. Richards, that it participated in obtaining the release from her, that it converted to its own use the options to which Mrs. Richards was entitled, and that it was acquainted with the terms of the agreement of joint venture and that it benefited by the release obtained from Mrs. Richards. Since liability was imposed on the corporation upon the basis of its own acts and omissions and on benefits received by it, no right of reimbursement existed against Presley. All of this overlooks the true nature of the liability imposed upon the corporation by the Appellate Division. Deferring for a moment consideration of the findings of fact and conclusions of law of the Appellate Division, one fact stands out in bold relief — the corporation was obliged to disburse $100,000 in settlement of a judgment obtained as the result of the negotiations conducted by Presley alone, culminating in the release executed by Mrs. Richards. The Appellate Division has found that this release was obtained through the fraud of the corporation, as well as through the fraud of Presley, and that the corporation has derived benefits therefrom. The aforesaid findings must be read in the light of the underlying facts, all of which were elicited in this case from the defendants themselves. At the time the fraud was committed the corporation was completely dominated by Presley. He, together with a stenographer, constituted the entire organization and staff of the corporation. The only stockholders were the three

incorporators. No stocks or options had as yet been issued. No capital had been paid into the treasury. Presley was the only active director, the others being dummies. There was no meeting of the dummy board from June, 1927, until some time after the release had been executed. Presley was the only person associated with the corporation who had any dealings or discussions with Mrs. Richards. He alone made the fraudulent misrepresentations; he alone obtained the release from Mrs. Richards; he alone directed distribution of the options which rightfully belonged to Mr. Richards. For all intents and purposes, during the period in question, Presley was the corporation and, obviously, the findings of the Appellate Division implicating the corporation must have been predicated on the theory that the corporation was answerable by legal imputation for the acts of Presley, its self-constituted agent.

Presley's fault was actual and personal, while the fault of the corporation was constructive or vicarious. As to Mrs. Richards, both Presley and the corporation were equally responsible, but as between themselves another rule is brought into being, namely, that one " who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures made in discharge of such liability." (Restatement of the Law of Restitution, section 96; *Fedden* v. *Brooklyn Eastern District Terminal*, 204 App. Div. 741.) The corporation, without personal fault, became subject to tort liability for the unauthorized and wrongful conduct of Presley. Presley's duty to make the corporation whole existed at the time when the releases were exchanged. While it is assumed that the directors acted in good faith in authorizing Presley's release from any liability to the corporation, the record is barren of any proof that the minds of the directors adverted to the nature of the claim, if any, that was being released. One director testified that he never did inquire into the claim from which Presley sought release; that he never discussed the question with any member of the board; that counsel was not consulted; that the release was given because Presley's proposal was made on that basis. He was apparently satisfied to adopt any suggestion made by Presley. Other directors stipulated that, if called, their testimony on the subject would be the same. We are thus confronted with a situation wherein Presley, a director and president of the corporation, is released of a substantial corporate claim by the action of his colleagues on the board who did not even deem it necessary to ascertain whether anything of value was being released.

The defendants contend that the release was supported by consideration, the consideration being Presley's contribution of $100,000 which made it possible for the corporation to settle the judgment against it for one-half of the sum demanded by Mrs. Richards. They say it was for the best interests of the corporation to effect a prompt settlement in view of the impending plan of mutualization and reorganization under which stockholders would derive considerable benefits. But that is just another way of saying that Presley, taking advantage of the time element involved and in violation of his fiduciary obligations, forced the corporation into a position where it was left no real choice but to accept his proposition. That course, however, was not the only one open to the corporation. It could have paid Mrs. Richards the $200,000 and then proceeded against Presley for reimbursement. At that time the corporation had the necessary funds and Presley was financially able to respond. It would be anomalous to find consideration in Presley's contribution to the settlement when, by that very act, Presley required the corporation to disburse $100,000 in settlement of an obligation that rested primarily on him.

Since the corporation received no benefit from Presley's contribution, the directors were powerless to authorize execution of the release. Their act in doing so was *ultra vires* and constituted an unauthorized misappropriation of corporate assets. (*Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113.) If, as a by-product of the fraud practiced on Mrs. Richards, an unmeasured and perhaps unmeasurable benefit was conferred on the corporation, Presley cannot be heard to say that he is thereby rendered immune from liability to the corporation for the wrong he had committed. The wrong, it will be recalled, was committed at a time when Presley was acting not alone in his capacity as officer and sole director of the corporation, but also individually to further his own interests as a promoter of the corporation. The fact that the corporation did not receive any of the options distributed by Presley induces the belief that Presley was concerned not so much with the welfare of the corporation as he was with his own. If any benefit was conferred on the corporation, Presley has been compensated therefor in the form of the options allocated to him.

The directors must be held accountable for their conduct regardless of the motives which inspired it. Let findings and judgment in accordance therewith be promptly submitted.